ARGO AIR, INC. v. LEROY SCOTT, TRUSTEE, AARON WATMAN AND DANIEL GINTIS

No. 732SC113

(Filed 27 June 1973)

1. **Usury § 1— relationship of broker to parties — relevance to nature of transaction — failure to make necessary findings**

   Whether the transaction in question was usurious depended upon the questions (1) whether one Bartlett was acting as broker for plaintiff borrower and received, by payment or by cancellation of a note owed defendant lender or a combination of both, a $3800 commission, or (2) whether Bartlett was acting as agent for defendant and defendant received as a commission all but $500 of the $3800 commission; failure of the trial court to determine Bartlett's position as to

Argo Air, Inc. v. Scott

the parties and hence the nature of the transaction requires a new trial.

**2. Usury § 5— usurious transaction — invalidation of note and deed of trust — improper remedy**

Trial court erred in adjudging that the note and deed of trust in question were null and void as a usurious transaction and permanently enjoining the foreclosure of the deed of trust, since usury does not invalidate a contract but simply works a forfeiture of the entire interest and subjects the lender to liability to the borrower for twice the amount of interest paid. G.S. 24-2.

APPEAL by defendants from *Tillery, Judge,* at the 7 August 1972 Civil Session of BEAUFORT Superior Court.

Plaintiff instituted this action to have defendants enjoined from foreclosing a deed of trust on real estate, contending that the deed of trust purported to secure a usurious transaction and that plaintiff is entitled to have the security instruments cancelled. Jury trial was waived.

Material allegations of the complaint are summarized as follows:

On or about 5 March 1970, plaintiff executed and delivered to defendant Watman a promissory note for $21,600, payable $600 per month for 36 months. To secure the note, plaintiff executed to defendant Scott, as trustee, a deed of trust on a tract of land in Beaufort County. Consideration for the note was a loan from defendant Watman to plaintiff but plaintiff received only $15,000, being charged interest at the rate of 22%. Plaintiff has paid $6,600 on the indebtedness, which amount has been applied by defendants Gintis and Watman to interest. By virtue of North Carolina usury laws, defendant Watman owes plaintiff $13,200. Plaintiff is entitled (1) to have the note and deed of trust declared null and void as a usurious transaction, (2) to recover judgment against defendants Gintis and Watman for $13,200, (3) to have defendants enjoined from foreclosing the deed of trust, and (4) to have defendants render an accounting.

In their answer defendants denied any usury, alleged that plaintiff was in default, and owed $13,481.67 plus interest from 20 March 1971 on the indebtedness.

Following the final pretrial conference, the parties stipulated that the "applicable statute governing the lawful rate of interest to be charged in this transaction is Sec. 24-1.2 (b) of

the 1969 Supplement and that the maximum lawful interest rate is twelve per cent," that plaintiff had paid $6,600 on the note, and that the contested issues to be tried by the court are:

"(a) The actual amount of the loan proceeds advanced by the defendants.

(b) The rate of interest charged by the defendants.

(c) The position of Odell Bartlett in the transaction, that is, if he was anyone's agent and, if so, was he the agent of the plaintiff or the agent of the defendant lender.

(d) Was the rate of interest charged usurious as being in violation of the lawful interest rate permitted under Sec. 24-1.2(b) of the 1969 Supplement?"

At trial plaintiff presented five witnesses including Odell Bartlett (Bartlett), and defendants Gintis and Scott. Pertinent evidence tended to show:

Defendant Gintis, 48, is a practicing chemist residing in Kinston, N. C. Defendant Watman, 80, is the father-in-law of defendant Gintis, is retired and resides in Florida. Because he needed some additional income, defendant Watman authorized defendant Gintis to loan some money for him. In January 1970 Bartlett, a loan broker residing in Raleigh, N. C., and other places, advised defendant Gintis that plaintiff was looking for a loan which could be secured by real estate. Defendant Gintis, his wife, Bartlett and a bank representative viewed the land and concluded that it was worth $20,000. Thereafter, defendant Gintis refused to make any loan on the property but later was "talked into it."

Defendant Gintis, called as an adverse witness, testified: The amount of money he loaned was $18,875, with $15,000 paid directly to plaintiff, $3,800 brokerage fee was paid to Bartlett and $75 "was thrown in for my time and my wife's appraisal." While he gave Bartlett a check for $3,800 covering the brokerage fee, Bartlett endorsed the check and gave it back to Gintis and the check was never deposited. At the time, Bartlett owed Gintis a note for $2,500 which was cancelled and delivered to Bartlett and the remaining $1,300 was paid in cash and checks.

In his testimony Bartlett (called as a witness by plaintiff) corroborated Gintis regarding the brokerage fee. He further testified: Although he had previously borrowed money from

Gintis, he had never before "brokered" a loan to or for Gintis. About a week before the loan in question was closed, he met with Gintis and Casey (plaintiff's president) in defendant Scott's office and "figured out the whole deal." He calculated the interest at 8%, the deal included a $3,800 brokerage fee for Bartlett and Gintis and Casey agreed to it. Bartlett got into the transaction through one John Whitford (also a loan broker) who was trying to obtain a loan for plaintiff and solicited Bartlett's assistance.

Casey testified that he met Bartlett in the spring or late winter of 1970 and that Bartlett "put me in touch with Mr. Gintis." He admitted executing the $21,600 note on behalf of plaintiff, received $15,000, but denied that he ever "designated" Bartlett as his agent.

Whitford testified that he was present when the loan was closed and that Bartlett had previously told him that he (Bartlett) was going to receive $500 out of the transaction from Gintis.

After reciting the stipulations, the judgment contains the following:

"Daniel Gintis, one of the defendants, learned of the desire of Argo Air, Inc., the plaintiff, to borrow money through Odell Bartlett. Odell Bartlett is in the business of arranging loans by bringing together potential lenders and potential borrowers for a fee. Odell Bartlett and Daniel Gintis had been acquainted with one another for several years and Odell Bartlett had in prior times borrowed money from Daniel Gintis.

At the time of closing of the loan made from Aaron Watman to the plaintiff the plaintiff received $15,000.00. In addition thereto Daniel Gintis handed to Odell Bartlett a check in the amount of $3,800.00 which Odell Bartlett endorsed and returned to Daniel Gintis. Daniel Gintis also received $75.00 which was charged against the loan to plaintiff. Subsequent to the time of loan closing Odell Bartlett received the sum of $500.00 represented by three checks on the bank account of Daniel Gintis. Odell Bartlett told John Whitford prior to settlement of the loan that he (Odell Bartlett) expected to receive $500.00 as a fee for arranging a transaction between Daniel Gintis and the

plaintiff. Odell Bartlett told John Whitford, who was interested in the transaction, that Daniel Gintis would see to payment for John Whitford.

Based upon the foregoing findings of fact, the court concludes as a matter of law that the actual amount of money advanced by the defendants, Daniel Gintis and Aaron Watman, to the plaintiff was $15,000.00; that the rate of interest charged by the defendants Gintis and Watman was twenty-two per cent, which was in excess of the lawful interest rate permitted under the general statutes of North Carolina and was, therefore, usurious."

The court adjudged that the note and deed of trust were null and void "as a usurious transaction" and ordered that defendants be permanently enjoined from foreclosing the deed of trust. Defendants appealed.

*Gordon B. Kelley for plaintiff appellee.*

*Gerrans & Spence by William D. Spence for defendant appellants.*

*Turner & Harrison by Fred W. Harrison for defendant appellants.*

BRITT, Judge.

Defendants assign as error the failure of the court to allow their motions to dismiss interposed at the conclusion of the evidence. We hold that the evidence was sufficient to survive the motions.

By proper assignments of error, defendants contend (1) that the facts found by the court do not support its conclusion that the rate of interest charged by defendants Gintis and Watman was usurious, and (2) that the facts found do not support the judgment. The assignments of error are sustained.

[1] Crucial to a determination of this case is the position occupied by the broker, Bartlett. Was he acting as the agent of plaintiff in negotiating the loan or was he acting as the agent of defendant Gintis? In the final pretrial order, the parties agreed that this was an issue but the court did not make the determination.

In 12 Am. Jur. 2d, Brokers, § 31, pp. 795-796, we find: "A brokerage relationship is created by a contract between the parties, the elements of which are those that enter into the formation of any contract. There must be consideration, mutuality, and a meeting of the minds as to essential matters. The contract may arise either by virtue of a prearranged agreement, express or implied, between the parties, or by the principal's subsequent ratification of the broker's unauthorized acts."

In *Henderson v. Finance Company,* 273 N.C. 253, 263, 160 S.E. 2d 39 (1968), it is said: "By hypothesis, one who makes no loan but, as broker or agent of the borrower, finds a lender and procures the making of a loan by him, has not received usury when he collects a fee for his services. If, however, the lender, himself, charges a commission in addition to the maximum rate of interest permitted by the statute, such charge is usury. *Arrington et al. v. Goodrich et al.,* 95 N.C. 462."

Although the quoted statement from *Henderson* is not totally apropos to the instant case, we think it is analogous. In our opinion, if Bartlett was acting as broker for plaintiff and received, by payment or by cancellation of a note owed Gintis or a combination of both, the $3,800 commission, then the transaction complained of was not usurious; but, if Bartlett was acting as agent for Gintis and Gintis received as a commission all but $500 of the $3,800, then the transaction was usurious.

While plaintiff's president, Casey, testified that he did not at any time *designate* Bartlett as plaintiff's agent, there was evidence tending to show at least an implied contract between plaintiff and Bartlett and plaintiff's ratification of Bartlett's obtaining the loan and charging $3,800 commission. On the other hand, there was evidence from which the court could find that Bartlett was acting as agent for Gintis; that Bartlett received only a small part of the commission and that Gintis received *as a commission* a sufficient amount of the $3,800 to make the transaction usurious. It was incumbent on the court to make clear and specific findings of fact from the conflicting testimony. For failure of the court to make a proper determination as to Bartlett's position, there must be a new trial.

[2] Finally, defendants contend that the court erred in adjudging that the note and deed of trust are null and void "as a usurious transaction" and permanently enjoining the foreclosure of the deed of trust. This contention likewise has merit.

G.S. 24-2, our usury statute, provides in pertinent part as follows:

> "The taking, receiving, reserving or charging a greater rate of interest than permitted by this chapter or other applicable law, either before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest which the note or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or his legal representatives or corporation by whom it has been paid, may recover back twice the amount of interest paid in an action in the nature of action for debt."

The usury statute must be strictly construed. *Dixon v. Osborne,* 204 N.C. 480, 168 S.E. 683 (1933). Under the statute, usury does not invalidate a contract; it simply works a forfeiture of the entire interest, and subjects the lender to liability to the borrower for twice the amount of interest *paid. Kessing v. National Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971); *Wilkins v. Commercial Finance Company,* 237 N.C. 396, 75 S.E. 2d 118 (1953).

Upon a retrial of the case at bar, should the court determine that the transaction was usurious, the court will (1) eliminate the indebtedness of all interest *charged,* (2) determine the amount of interest *paid,* and (3) give plaintiff credit on the indebtedness for twice the amount of interest *paid.* Plaintiff then will be indebted to the holder of the note for the balance remaining, and unless the balance is paid, the holder will be entitled to have the deed of trust foreclosed as provided therein.

For the reasons stated, the judgment appealed from is vacated and the cause is remanded for a

New trial.

Judges BROCK and HEDRICK concur.