PARKER TREE FARMS, INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Parker Tree Farms, Inc. v. Commissioner
Docket Nos. 5431-76, 5432-76, 5433-76.
United States Tax Court
T.C. Memo 1983-357; 1983 Tax Ct. Memo LEXIS 424; 46 T.C.M. (CCH) 493; T.C.M. (RIA) 83357; June 20, 1983. *424 Parker Tree Farms, Inc.
Held:
1. Petitioner received unreported interest income in the amount of $7,500 in 1970. 2. Petitioner overstated its basis in land sold to Weyerhauser Paper Company in 1967 by $46,368.74. 3. Petitioner is liable for an addition to tax for failure to timely file corporate income tax returns for 1968 and 1970, under section 6651 (a). 4. Petitioner is liable for an addition to tax for negligence for 1968 and 1970, under section 6653(a). Josephus D. and Helen H. Parker
Held:
1. Petitioners received constructive dividends in the amounts of $37,500 and $27,808.15 from J.D. Parker & Sons, Inc., in 1968 and 1969, respectively. 2. Petitioners received constructive dividends of $1,406.37 during each of the years 1968, 1969 and 1970 from the personal use of corporate automobiles. 3. Petitioners are not entitled to exclude any amounts as sick pay under section 105(d) with respect to wages received from Parker Tree Farms, Inc. and J.D. Parker & Sons, Inc., in the years 1968, 1969, and 1970. 4. Petitioners are liable for an addition to tax for negligence for 1968 and 1969, under section 6653(a). J.D. Parker & Sons, Inc.
Held:
1. Petitioner received unreported *425 capital gain and interest income of $14,824.48 and $15,149.97, respectively in 1969 in connection with the sale of land. 2. Respondent's determination of the amount of depreciation allowable in 1968, 1969 and 1970 sustained. 3. Fifty percent of deductions claimed relative to corporate automobiles in 1968, 1969 and 1970 held to constitute a constructive dividend are not deductible as an ordinary and necessary business expense. 4. Petitioner is not entitled to a worthless stock deduction of $10,230.75 in 1970, under section 165(g)(1). 5. Petitioner is subject to the personal holding company tax in 1968 and 1969. 6. Petitioner is liable for an addition to tax for failure to timely file corporate income tax returns for 1968 and 1969, under section 6651(a)(1). 7. Petitioner is liable for an addition to tax for negligence for 1968 and 1969, under section 6653(a). J. Russell Kirby and J. Jerome Miller, for the petitioners. Frank D. Armstrong, Jr., for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Parker Tree Farms, Inc. (Docket No. 5431-76)
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
1968
$125,435.26
$31,433.82
$6,271.76
1970
3,803.65
950.91
190.18
Josephus *426 D. and Helen H. Parker (Docket No. 5432-76)
Addition to Tax
Year
Deficiency
Sec. 6653(a)
1968
$18,638.75
$931.94
1969
8,959.75
447.99
1970
16.30
J.D. Parker & Sons, Inc. (Docket No. 5433-76)
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
1968
$49,644.15
$12,411.04
$2,482.21
1969
40,831.89
10,207.97
2,041.59
1970
135.02
After concessions by petitioners and the respondent, the issues remaining for our decision in these three cases are as follows: Parker Tree Farms, Inc. (Docket No. 5431-76)
1. Whether a portion of the $10,000 payment received by Parker Tree Farms, Inc., from an individual, Joseph C. Hill, in the calendar year 1970 constitutes interest income; 2. Whether the Court has jurisdiction to determine the correctness of an adjustment made by respondent with respect to the calendar year 1967 where no deficiency was determined and where there were no carrybacks from subsequent deficiency years that would affect 1967 taxes. Alternatively, whether Parker Tree Farms, Inc., in determining gain from the sale of land in 1967, overstated its basis in such land by $46,343.79; 3. Whether Parker Tree Farms, Inc. is liable for the addition to tax for failure to file timely corporate income tax *427 returns under section 6651(a)(1) [2] for the taxable years 1968 and 1970; 4. Whether a part of the underpayment of 1968 and 1970 income taxes of Parker Tree Farms, Inc., was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a); Josephus D. and Helen H. Parker (Docket No. 5432-76)
5. Whether payments of $37,500 and $27,808.15 received by J. D. Parker in 1968 and 1969, respectively, from J.D. Parker & Sons, Inc., constitute constructive dividends; 6. Whether J. D. Parker received constructive dividends from J.D. Parker & Sons, Inc., of $1,406.37 during each of the years 1968, 1969, and 1970 from the personal use of corporate automobiles; 7. Whether J. D. Parker qualifies for the sick pay exclusion with respect to wages received from Parker Tree Farms, Inc., and J.D. Parker & Sons, Inc., in the years 1968, 1969, and 1970; 8. Whether a portion of the underpayment in income taxes of Mr. and Mrs. Parker for the years 1968 and 1969 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a); J.D. Parker & Sons, Inc. (Docket No. 5433-76)
9. Whether J.D. Parker & Sons, Inc., received unreported *428 capital gain and interest income in the calendar year 1969 in the amounts of $14,824.48 and $15,149.97, respectively, in connection with the sale of land to Mordecai-Pfeiffer Ranch, Inc.; 10. Whether J.D. Parker & Sons, Inc., is entitled to a greater depreciation allowance than was allowed by respondent in 1968, 1969, and 1970 on buildings and equipment acquired by that corporation in connection with the purchase in 1961 of a farm previously owned by Elizabeth C. Parker, mother of J. D. Parker; 11. Whether 50 percent of certain deductions claimed by J.D. Parker & Sons, Inc., in connection with the operation of corporate automobiles was properly disallowed because the automobiles were used for personal purposes and because the corporation failed to maintain records to substantiate the claimed deductions; 12. Whether stock held by J.D. Parker & Sons, Inc., in Stanrock Uranium and Commonwealth United became worthless in 1970 so as to entitle J.D. Parker & Sons, Inc., to claim a long-term capital loss of $10,230.75; 13. Whether J.D. Parker & Sons, Inc., constituted a personal holding company under section 541 for the years 1968 and 1969; 14. Whether J.D. Parker & Sons, Inc., is liable *429 for the addition to tax for failure to file timely corporate income tax returns for 1968 and 1969, under section 6651(a)(1); and 15. Whether a part of the underpayment of 1968 and 1969 income taxes of J.D. Parker & Sons, Inc., was due to engligence or intentional disregard of rules and regulations. FINDING OF FACT - GENERAL Some of the facts have been stipulated in each of the three consolidated cases and are found accordingly. The stipulations of facts and the attached exhibits are incorporated herein by this reference. As a preliminary matter, we note that the trial of these three consolidated cases lasted six days and filled over 600 pages of transcript. In contrast, the stipulated facts are few. At the conclusion of the trial the Court urged the parties to submit supplemental stipulations of fact. See Rule 91. [3]
Much to our dismay no additional facts have been stipulated. The disagreements over the relevant facts extend to the smallest details. Many of the transactions underlying *430 the issues presented for our decision occurred over 20 years ago and petitioners' accountants, whose testimony would have been of great assistance, died prior to trial. We believe it would be pointless and an inappropriate use of this Court's limited time to discuss and attempt to reconcile the innumerable discrepancies in the parties' respective versions of the facts. Our findings of fact result from a gleaning of this voluminous record and constitute our assessment of the facts necessary to resolve the issues presented for decision. For organizational purposes we have found facts separately for the three consolidated cases. However, as certain facts are relevant to more than one docket number, they may be used as a basis for resolution of the issues in all three cases. FINDINGS OF FACT Parker Tree Farm, Inc. (Docket No. 5431-76)
parker Tree Farm, Inc. (hereinafter "Parker Tree") is a North Carolina corporation whose principal business address at the time of the filing of the instant petition was at Elm City, North Carolina. Its Federal income tax returns for the calendar years 1968 and 1970 were prepared and filed on the cash receipts and disbursements method of accounting. *431 Parker Tree was incorporated on June 6, 1956, and was engaged principally in farming and the timber business prior to 1967. In that year Parker Tree sold substantially all of its assets due to the failing health and advancing age of its principal officer, J. D. Parker. J. D. Parker was 61 years of age in 1967. He had had a severe heart attack in 1964 and during the years in issue he was suffering from ailments such as hypertension, diabetes, partial blindness and impaired hearing which required periodic hospitalization and frequent physician care. Mr. Parker was confined to his bed much of the time during the years 1967 through 1970.The Social Security Administration determined that Mr. Parker was totally and permanently disabled and sent him disability payments until he reached age 65 in 1971. Parker Tree sold its land holdings to Weyerhauser Paper Company in 1967.The income reported on petitioner's 1967 corporate income tax return consisted of timber sales, dividends, gains from the sale of land, a gas tax refund and gains from the installment sale of a land option. Alton P. Parker, J. D. Parker's son, was the president of Parker Tree. However, J. D. Parker, the corporate *432 secretary, was the principal executive of Parker Tree during the taxable years in issue and made the final decision to buy or sell land, timber and securities.Because of the state of his health, however, Mr. Parker was unable to manage the day-to-day affairs of the corporation and conducted most of his business transactions from his home over the telephone. In 1967, Joseph C. Hill owned an option to purchase certain farmland in Carteret County, near Newport, North Carolina. Mr. Hill did not have sufficient funds to exercise the option and was unable to borrow the needed capital in time to meet the option deadline. Mr. Hill approached J.D. Parker and convinced him that the land could be sold for substantially more than the option price. Parker Tree, through J. D. Parker, began negotiating with Joseph Hill and on September 29, 1967, Parker Tree loaned $150,000 to Mr. Hill to enable him to acquire the Carteret County land. In consideration for the $150,000 loan, Mr. Hill executed and delivered to Parker Tree a note and deed of trust dated September 29, 1967, in the principal amount of $225,000 with interest payable at the rate of 6 percent. On its 1967 Federal income tax return *433 Parker Tree reported the difference between the $150,000 loan to Joseph Hill and the $225,000 note and deed of trust (i.e., $75,000), as a gain from the installment sale of a land option in which it had a basis of zero.As no payments were received in 1967, no taxable gain on the sale was reported in that year. Joseph Hill was subsequently able to obtain a loan of $85,000 from the Federal Land Bank using the Carteret County land as collateral and, on January 5, 1968, paid Parker Tree $77,762.50. Parker Tree cancelled the $225,000 note and deed of trust and Joseph Hill gave Parker Tree another note for $150,000 and a second deed of trust subordinate to the Federal Land Bank deed of trust dated December 1, 1967. The document was filed with the County Register of Deeds on January 2, 1968. The receipt of $75,000 was entered on Parker Tree's books as a reduction to "Notes Payable-Bank" rather than as a collection on an installment sale. The $75,000 payment was not reported by Parker Tree on its 1968 corporate income tax return. On September 29, 1967, the date that the $150,000 loan was made to Joseph Hill, two separate agreements were entered into between Parker Tree and Joseph Hill. *434 One agreement provides that Joseph Hill, in consideration for a loan of $225,000, would sell a tobacco allotment on the Carteret County land to Parker Tree for $75,000. The agreement further provided that, in the event the note was not paid to Parker Tree, the purchase price of the tobacco allotment would be applied against the principal balance due on the note. The second agreement referred to a purchase by Parker Tree on February 28, 1967, of a one-half interest in an option to purchase land and a sale of the one-half interest in the option by Parker Tree back to Joseph Hill on September 29, 1967, for $75,000. In January 1969, Joseph Hill and others formed a corporation called River Development Corporation. The Carteret County land was transferred to this corporation. As part of the consideration for the transfer of the land Joseph Hill received a $25,000 note. In May 1969, Parker Tree loaned $12,500 to Joseph Hill. In consideration of this transfer of funds, Joseph Hill gave Parker Tree a one-half interest in the $25,000 note given to him by the other shareholders in River Development Corporation in January of that year. [4] The entire $12,500 payment to Mr. Hill in May 1969 *435 was recorded on the books of Parker Tree as a note receivable. On November 21, 1970, Joseph Hill purchased back the one-half interest in the promissory note for $10,000. Prior to November 21, 1970, Mr. Hill had also made another $10,000 payment to Parker Tree as a part of this transaction. Thus, Mr. Hill paid Parker Tree a total of $20,000 relative to this matter during the years 1969 and 1970. The 1970 Federal corporate income tax return of Parker Tree included a $7,500 gain (net gain of $7,475.05) from the sale of securities relative to the $10,000 paid on November 21, 1970, by Joseph Hill. Due to a net operating loss carryover reported on its 1969 return, Parker Tree reflected no taxes due on its 1970 return. In 1971, River Development Corporation instituted an action in state court against Parker Tree and J D. Parker where in it was contended that requiring Joseph Hill to issue a $225,000 *436 note for a $150,000 loan violated North Carolina's usury laws. The suit was settled in 1972 by River Development Corporation's agreement to pay Parker Tree $92.500 in release of the $150,000 note and deed of trust which had an outstanding balance at that time of approximately $146,272.50. On January 24, 1969, Joseph Hill paid Parker Tree $10,605 on the $150,000 note. Of this payment, $9,105 was reported by Parker Tree as interest on its 1969 Federal income tax return. By an adjusting entry dated December 31, 1970, the corporation's accountant reduced interest income in 1970 by $1,500. The explanation of this entry states that it is to correct the interest income of 1969 reported from the $10,605 payment. The 1967 return of Parker Tree reflected a gain of $337,729.28 from the sale of land to Weyerhauser Paper Company. The gain was computed by subtracting a basis of $100,270.72 from a sales price of $438,000. Parker Tree's books and records and its accountant's workpapers show that the basis of $100,270.72 consisted of the following amounts: Land - $37,518.48; Buildings - $3,019.45; amount from Journal Entry No. 13 - $46,368.74; amount from Journal Entry No. 14 - $12,882.25; and *437 tax - $481.80. The increase in the basis of the land made during 1967 by Journal Entry No. 13 was due to the capitalization of 70 percent of the total expenses Parker Tree deducted on its 1965 and 1966 returns for labor, gas, and supplies relevant to this land. Parker Tree did not file amended returns for the 1965 and 1966 taxable years to increase its income by the amounts of expenses that it capitalized.However, on its 1967 return, Parker Tree reduced its not operating loss carryover from 1965 and 1966 by $46,386.74, the amount by which it increased its basis in the land by capitalizing expenses incurred for labor, gas, and supplies. Respondent did not audit Parker Tree's Federal income tax returns for the 1965 and 1966 taxable years. Parker Tree filed the proper form (Form 7004) with the respondent seeking an automatic 3-month extension of the due date for filing its corporate income tax return for the calendar year 1968 from March 15, 1969, to June 15, 1969. Parker Tree made no deposit of 1968 estimated taxes prior to the due date of the return and made no remittance of 1968 estimated taxes at the time it filed the extension form. Parker Tree subsequently sought and received *438 an additional 3-month extension for filing its 1968 return to September 15, 1969. This additional extension was granted subject to petitioner having timely filed a proper original extension request. Parker Tree filed a 1968 return which was signed and dated September 15, 1969, and was received by the Southeast Service Center, Chamblee, Georgia, on September 17, 1969. The return reflected total income of $9,627.70, total deductions of $11,133.89 and a corresponding operating loss of $1,506.19. The income reported on the 1968 return consisted of interest in the amount of $5,184.20, dividends in the amount of $4,423.50, and rent in the amount of $20.00. Parker Tree filed a second income tax return for the taxable year 1968 captioned "Amended U.S. Corporation Income Tax Return" which was received at the Southeast Service Center on December 17, 1969. The amended return reflected 197 separate short-term and long-term sales of securities generating gross sales of $692.542.53, in which it had a total cost basis of $649,835.40, resulting in a gain of $42,707.13. The amended return reflected total income of $52,591.38, deductions of $19,118.51, taxable income of $29,921.14, and a tax *439 due of $7,626.62. The following schedule reflects the differences in income and deductions appearing on Parker Tree's original and amended 1968 return: Original
Amended
Dividends
$ 4,423.50 $ 4,178.50
Other Interest
5,184.20 5,184.20
Gross Rents
20.00 521.55
Net Gains-Schedule D
42,707.13
Total Income
$ 9,627.70 $52,591.38
Salaries & Wages
$ 5,977.80 $ 5,977.80
Repairs
9.38 9.38
Taxes
33.96 2,969.55
Interest
2,984.99 3,856.07
Depreciation
4,197.95
Other deductions
2,127.76 2,107.76
Total Deductions
$ 11,133.89 $19,118.51
Taxable Income
$ (1,506.19)
$29,921.14 Both the original and amended 1968 returns were signed by Alton P. Parker, the son of J. D. Parker and President of Parker Tree. Parker Tree timely filed the proper form with respondent seeking an automatic 3-month extension for filing its corporate return for the calendar year 1970 from March 15, 1971, to June 15, 1971. Parker Tree made no deposit of 1970 estimated taxes prior to the due date of the return and made no remittance of 1970 estimated taxes with the request for extension. Parker Tree filed a 1970 return which was received at the Southeast Service Center on September 27, 1971. The return was signed and dated by its president, Alton P. Parker, *440 on September 21, 1971. Parker Tree's corporate income tax returns for 1967-1971 were prepared by Perry Wheeler, a certified public accountant. In the notice of deficiency dated March 17, 1976, respondent determined that Parker Tree realized a long-term capital gain in 1967 of $384,098.02 from the sale of land and buildings in lieu of the $337,729.28 reported on its return. [5] Respondent also determined that the $10,000 payment received from Joseph Hill in 1970 constituted interest income and that the additions to tax for failure to file and negligence were applicable for both 1968 and 1970. In addition, because over 60 percent of petitioner's adjusted ordinary gross income consisted of dividends and interest in 1968 and 1970, respondent determined that petitioner was subject to personal holding company tax imposed by section 541 for those years. [6] *441 OPINION Issue 1: Joseph Hill Transaction
The first issue for our decision concerns the treatment of a portion of the $10,000 payment made by Joseph Hill to Parker Tree on November 21, 1970. The pertinent facts relating to petitioner's dealings with Mr. Hill are as follows: On September 29, 1967, Parker Tree loaned $150,000 to Joseph Hill to enable him to exercise an option on certain Carteret County farmland. In consideration for the $150,000 *442 loan, Joseph Hill gave petitioner a note and deed of trust in the principal amount of $225,000 with stated interest payable of 6 percent. On January 5, 1968, Joseph Hill paid $77,762.50 on this note and the parties cancelled the original note and replaced it with a second note in the principal amount of $150,000. Of the above payment, $75,000 was not reported by Parker Tree as income on its 1968 return. In January 1969, Joseph Hill transferred the Carteret County land to the newly created River Development Corporation. As part of the consideration for this transfer Joseph Hill received a $25,000 note from the corporation. In 1971, River Development Corporation instituted an action against Parker Tree and J. D. Parker contending that requiring Joseph Hill to issue a $225,000 note for a $150,000 loan violated North Carolina's usury laws. [7] *443 The suit was settled in 1972 by the corporation's agreement to pay Parker Tree $92,500 in release of the $150,000 note and deed of trust. [8]
In May of 1969 Parker Tree entered into a second transaction with Joseph Hill.In consideration for the sum of $12,500, Joseph Hill transferred to Parker Tree a one-half interest in the $25,000 note given to him by River Development Corporation in 1969. The entire $12,500 payment was recorded on the books of Parker Tree as a note receivable. On November 21, 1970, Joseph Hill repurchased the one-half interest in the promissory note for $10,000. Parker Tree Farms received a total of $20,000 relative to this transaction during the years 1969 and 1970.
Petitioner contends that the transfer of $12,500 to Joseph Hill in May of 1969 consisted of a loan of $10,000 and the purchase of a one-half interest in the $25,000 note given by River Development Corporation to *444 Joseph Hill in January of 1969 for $2,500. Parker Tree further contends that Joseph Hill repurchased his one-half interest in the promissory note on November 21, 1970 for $10,000, resulting in a long-term capital gain of $7,500 which was reported on the corporation's 1970 income tax return. However, due to a net operating loss carryover reported on its 1969 return, Parker Tree reflected no taxes due on its 1970 return. It is respondent's contention that the entire $12,500 payment to Joseph Hill was a loan and that the purported purchase of the $25,000 note receivable for $2,500 and its subsequent repurchase in November 1970 for $10,000 were sham transactions concocted to enable Parker Tree to obtain a greater return on its $12,500 loan than was permitted under State law. Respondent argues that because $20,000 was paid to Parker Tree relative to this transaction in 1969 and 1970, $7,500 of the $10,000 payment made in November 1970 (i.e., the amount in excess of the $12,500 principal sum) constitutes usurious interest and, therefore, ordinary income to Parker Tree in that year. Petitioner bears the burden of proving that respondent's determination is in error. Welch v. Helvering,290 U.S. 111 (1933); *445 Rule 142(a). Our assessment of the facts does not convince us that petitioner has met the burden of proof. [9] Petitioner has presented us with no evidence suggesting why Joseph Hill would be willing to sell a one-half interest in a $25,000 promissory note for a mere $2,500. The whereabouts of Joseph Hill was unknown at the time of trial and therefore neither party had the benefit of calling him as a witness. Although a document was introduced into evidence which states that *446 a one-half interest in the promissory note was transferred to Parker Tree on May 14, 1969, and subsequently transferred back to Joseph Hill on November 21, 1970, the circumstances surrounding the two transfers are not stated. The usurious nature of Parker Tree's other dealings with Joseph Hill render this lack of explanation particularly suspicious. In addition, we note that the entire $12,500 payment to Joseph Hill was recorded as a note receivable on petitioner's books. While the $7,500 was reported as a long-term capital gain on petitioner's 1970 income tax return consistent with its position at trial as to the nature of this transaction, the availability of a net operating loss carryover eliminated all tax otherwise due on that amount. [10]
In sum, we believe that respondent's position that Parker Tree loaned Joseph Hill $12,500 and received $20,000 in return over a period of 1-1/2 years is the more probable of the two versions of the facts. Because the amount received exceeded the $12,500 principal amount, *447 the excess of $7,500 constitutes ordinary income to petitioner in its 1970 taxable year. Cf. Peterson v. United States,344 F.2d 419, 426-427 (5th Cir. 1965). Issue 2: Adjustment to Land Basis
The second issue for our decision is whether this Court has jurisdiction to consider adjustments made to petitioner's 1967 income tax liability in that no deficiency was determined for that year or, in the laternative, whether Parker Tree is entitled to add previously deducted expenses to the basis of land sold in 1967.
Parker Tree sold land to Weyerhauser Paper Company in 1967. The reported gain of $337,729.28 was computed by subtracting a claimed basis of $100,270.72 from a sales price of $438,000. Petitioner's claimed basis consisted of the following amounts: Land
$37,518.48
Buildings
3,019.45
Journal Entry No. 13
46,368.74
Journal Entry No. 14
12,882.25
Tax
481.80
Total
$100,270.72 The only disputed component of the claimed basis, Journal Entry No. 13, increased the basis of the land by capitalizing 70 percent of the total expenses Parker Tree had previously deducted for labor, gas and supplies on its 1965 and 1966 returns. Parker Tree's returns for those years were not audited. Although Parker *448 Tree did not file amended returns for those years to increase its income by the amount of expenses that it capitalized in 1967, Parker Tree did reduce its net operating loss carryover from 1965 and 1966 by $46,386.74. In the notice of deficiency respondent disallowed the adjustment to basis made by Journal Entry No. 13 and determined that Parker Tree realized a long-term capital gain of $384,098.02 instead of the reported gain of $337,729.28. Although this adjustment made to petitioner's 1967 return would have resulted in a proposed increased tax liability of $11,585.95, no statutory deficiency was determined for that year because assessment was barred by the 3-year statute of limitations under section 6501(a). This Court is a court of limited jurisdiction. Myers v. Commissioner,28 T.C. 12 (1957). The law is well settled that we have jurisdiction to redetermine a taxpayer's liability only for those years with respect to which a notice of deficiency has been mailed by the Commissioner to such taxpayer. Section 6214(a); Rule 13(a). It is clear that respondent has not determined a deficiency in petitioner's tax liability for its 1967 taxable year. Cf. Walsh v. Commissioner,21 T.C. 1063, 1067 (1954); *449 Anderson v. Commissioner,11 T.C. 841, 843 (1948). Section 6214(b) provides in pertinent part as follows: (b) Jurisdiction over other Years * * *.--The Tax Court in redetermining a deficiency of income tax for any taxable year * * * shall consider such facts with relation to the taxes for other years * * * as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year * * * has been overpaid or underpaid. Our jurisdiction over years not covered by a valid notice of deficiency is thus confined to a consideration of such facts as may be necessary to correctly redetermine the taxpayer's tax liability for a year that has been placed in issue. Lone Manor Farms, Inc. v. Commissioner,61 T.C. 436, 440 (1974), affd. 510 F.2d 970 (3d Cir. 1975). Although petitioner vaguely alleges that respondent has "bunch[ed]" net operating loss carryovers into a closed year by increasing the gain realized on the sale of the land in 1967, we are unable to determine to what extent, if any, such adjustment affects the determination of the correct tax liability for a year in issue. In any event, *450 we agree with respondent that Parker Tree has not presented sufficient evidence to justify its capitalization in 1967 of previously deducted expenses. Thus, petitioner has not met its burden of proof on the underlying substantive issue. Welch v. Helvering,supra; Rule 142(a). Issue 3: Section 6651(a) -- Addition to Tax
Section 6651(a)(1) provides in relevant part as follows: (a) Addition to the Tax.--In case of failure-- (1) to file any return required * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. [11]
Parker Tree is a calendar year taxpayer and as such the due date for the filing of its corporate income tax return is the 15th day of March following the close of each calendar *451 year. Section 6072(b). In the notice of deficiency respondent determined that petitioner is liable for the 25 percent maximum addition to tax for its 1968 and 1970 calendar years. Petitioner has the burden of proving that it is not liable for such additions. Neubecker v. Commissioner,65 T.C. 577, 586 (1975). Section 6081(b) provides an extension of time for the filing of corporate income tax returns. (b) Automatic Extension for Corporation Income Tax Returns.--An extension of 3 months for the filing of the return of income taxes imposed by subtitle A shall be allowed any corporation if, in such manner and at such time as the Secretary or his delegate may by regulations prescribe, there is filed on behalf of such corporation the form prescribed by the Secretary or his delegate, and if such corporation pays, on or before the date prescribed for payment of the tax, the amount properly estimated as its tax or the first installment thereof required under section 6152; * * * The Secretary's regulations authorized by section 6081(b) provides as follows: Sec. 1.6081-3. Automatic Extension of Time for Filing Corporation Income Tax Returns. (a) In general. A corporation shall be allowed *452 an automatic extension of time to the fifteenth day of the third month following the month in which falls the date prescribed for the filing of its income tax return provided the following requirements are met: (1) An application must be prepared in duplicate on Form 7004, "Application for Automatic Extension of Time to File U.S. Corporation Income Tax Return," and must be signed by a person authorized by the corporation to request such extension, and such person must be either an officer of the corporation or a person currently enrolled to practice before the Treasury Department. (2) The original of the application must be filed on or before the date prescribed for the filing of the return of the corporation with the internal revenue officer with whom the corporation is required to file its income tax return. The corporation shall make a remittance of an estimated amount of tax which shall not be less than would be required as the first installment under section 6152(a)(1) should the corporation elect to pay the tax in installments.[12] Upon the timely filing of Form 7004, properly prepared, the three-month extension shall be considered as allowed. If the taxpayer elects to pay *453 in installments the tax shown on Form 7004, the installment privilege provided in section 6152(a)(1) is limited to the amount shown on the form. The duplicate Form 7004 shall be attached to the completed income tax return when filed as evidence of the extension. [Emphasis added.] Parker Tree filed the proper form seeking an automatic *454 3-month extension for filing its 1968 return from March 15, 1969, to June 15, 1969, but made no deposit of estimated taxes prior to the due date of the return and made no remittance of estimated taxes at the time it filed Form 7004. According to the Service Center Transcript, the request for automatic extension was received by the Service Center on March 20, 1969. Petitioner sought and received an additional extension for filing its 1968 return to September 15, 1969, subject to its having timely filed a proper original request. Parker Tree's 1968 return was signed, dated, and mailed on September 15, 1969, and was received at the Service Center on September 17, 1969. The return reflected an operating loss of $1,506.19. Parker Tree filed an amended return for 1968 which was received at the Service Center on December 17, 1969. The amended return reflected taxable income of $29,921.14 and a tax due of $7,626.62. Both the original and amended 1968 returns were signed by Alton P. Parker, President of Parker Tree. Respondent argues that Parker Tree has not established that it filed a timely request to extend the time for filing its 1968 return from March 15 to June 15, 1969. Although *455 the facts are undisputed that the proper form was filed and that it was received by the Service Center on March 20, 1969, respondent contends that petitioner has offered no evidence to establish that the extension request was filed by March 15, 1969. Parker Tree did not attach a copy of its request for automatic extension to its original 1968 return and a copy of the request was not available at trial. Petitioner admits that it cannot prove the exact date of the mailing of the initial request for extension because of the death of its accountant and tax adviser, Perry Wheeler. Petitioner argues, however, that the receipt of the request 5 days after the March 15 due date is within the limits of reasonable mail service. Section 7502(a)(1) provides that a document received after the final date for filing such document but mailed on or before the final date is deemed filed on the date of the postmark, if the postmark itself is timely. We note that March 15 fell on a Saturday in 1969. Section 7503 provides in part that "[w]hen the last day prescribed under authority of the internal revenue laws for performing any act falls on Saturday, Sunday, or a legal holiday, the performance of *456 such act shall be considered timely, if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday." Therefore, petitioner need only have mailed its request for extension for filing its 1968 return by Monday, March 17, 1969, in order for it to have been timely filed. Petitioner is unable to provide any direct evidence as to the date of mailing of the request because of the death of its accountant and because the postmarked envelope was not produced at trial. In Sylvan v. Commissioner,65 T.C. 548 (1975) we indicated that even in the absence of a United States Postal Service Postmark the provisions of section 7502 would apply if evidence was presented sufficient to convince the Court that a postmark would have been timely. Thompson v. Commissioner,66 T.C. 737, 741 (1976). Petitioner argues that the receipt of the request for extension on March 20 is within the limits of reasonable mail service and tends to show that the request was timely mailed. While we sympathize with petitioner's inability to produce evidence on this issue we are not able to conclude from that single fact (i.e., receipt on March 20, 1969) that the Form 7004 was placed in an *457 envelope properly addressed and with the proper postage affixed and that the envelope was deposited in the mail on March 17, 1969, in sufficient time to have received a postmark of March 17, 1969.See section 7502(a)(2). While we might surmise that a document received by the Service Center in Chamblee, Georgia, on March 20, 1969, would probably have been mailed from the vicinity of Elm City, North Carolina, no later than March 17, we have no evidence on which to base such a finding. [13] Because petitioner has not met its burden of proving that its request for extension of time for filing its 1968 return was timely filed, we must sustain respondent's determination that the return for that year was not timely filed. The relevant facts relating to the filing of Parker Tree's return for its 1970 taxable year are as follows: Parker Tree timely filed the proper form seeking an automatic 3-month extension for filing its return to June 15, 1971. Petitioner made no deposit of 1970 estimated taxes prior to the March 15 due date *458 and made no remittance of estimated taxes with the request for extension. Parker Tree's 1970 return was signed and dated by Alton P. Parker on September 21, 1971, and was received at the Service Center on September 27, 1971.The return as filed reflected no tax due. Respondent has no record of petitioner's filing a request for an additional extension of time to file its 1970 return. Petitioner's original extension expired on June 15, 1971, and its return was not filed until September 27, 1971. No copy of the second request for extension was attached to the return and petitioner has not introduced any evidence to prove that one was filed. Therefore, we are unable to find that a second request for extension was ever filed or granted. [14]
Petitioner further argues, however, that the addition to tax for late filing should not be imposed for 1968 and 1970 because the late filing was "due to reasonable cause and not due to willful neglect" within the meaning of section 6651(a)(1). Petitioner argues that J. D. Parker's illness and his reliance upon his accountant to file the corporate returns constitutes reasonable cause. *459 We note that reliance on an accountant to file returns is not sufficient, in itself, to shield a taxpayer from liability under section 6651(a). Elliott v. Commissioner,40 T.C. 304, 315 (1963). While illness can, under certain circumstances, constitute reasonable cause, [15] petitioner has failed to explain why Alton Parker, the President of Parker Tree, and the corporate officer who signed the corporation's returns during from at least 1967 through 1971, was unable to supervise the timely filing of the 1968 and 1970 corporate returns. See Williams v. Commissioner,16 T.C. 893, 906 (1951). Petitioner's failure to present such evidence gives rise to a presumption that such withheld evidence would be unfavorable to petitioner's position on this issue. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Therefore, we sustain respondent's determination of the applicability of the addition to tax for late filing for the 1970 taxable year to be computed from the expiration of the extension of time to file on June 15, 1971.
Issue 4: Section *460 6653 -- Addition to Tax
Section 6653(a) provides that if any part of any underpayment of tax "is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment." Respondent determined that the section 6653(a) addition to tax is applicable for Parker Tree's 1968 and 1970 taxable years. The burden of proof rests with petitioners to show that respondent's determination was erroneous. Enoch v. Commissioner,57 T.C. 781, 802 (1972); Leroy Jewelry Co. v. Commissioner,36 T.C. 443 (1961). We are unable to conclude that such burden has been met. Respondent is sustained on this issue. FINDINGS OF FACT Josephus D. and Helen H. Parker (Docket No. 5432-76)
The petitioners, Josephus D. Parker (hereinafter J. D. Parker or petitioner) and Helen H. Parker are husband and wife who, at the time of filing their petition with this Court, were residents of Elm City, North Carolina. The petitioners filed joint original Federal income tax returns for the calendar years 1968, 1969, and 1970 and an amended return for 1969 with the Southeast Service Center, Chamblee, Georgia, reporting income on the cash receipts *461 and disbursements method. J. D. Parker is the principal officer of J.D. Parker & Sons, Inc., and Parker Tree Farms, Inc. two North Carolina corporations. J.D. Parker & Sons, Inc. (hereinafter Parker & Sons) acquired a 235 acre farm from Elizabeth Parker (J. D. Parker's mother) in 1961. In 1965, an entry was made on the books of Parker & Sons debiting an asset account entitled "Land" and crediting an account payable to J. D. Parker in the amount of $91,367.75. The explanation in the ledger for this entry was to "set up advances to Mrs. Josephus Parker (Elizabeth) as part of the cost of land for 1965." [16]
The minutes of a meeting of the Board of Directors of Parker & Sons dated October 31, 1962, contained a resolution that Parker & Sons would give J. D. Parker a note in recognition of remuneration received from him with respect to the following transactions and amounts: Wilson County Land - Halifax Paper Co.
$ 78,500.00
Cash Value - Life Insurance
44,962.42
Down Payment to Purchase 55,000 Acres
38,000.00
Moore County Property
22,516.76
$183,979.18
A copy of *462 the demand note in the amount of $183,979.18 dated October 31, 1962, given by Parker & Sons to J. D. Parker was attached to the minutes. In 1968 and 1969, Parker & Sons made payments to J. D. Parker pursuant to the 1965 book entry of $37,500 and $27,808.15, respectively. During the taxable years 1968, 1969, and 1970, J. D. Parker received a salary from Parker & Sons and Parker Tree, a portion of which he excluded from income as sick pay. The amounts of income reported and amounts excluded as sick pay are as follows: Year
Salary
Excluded as Sick Pay
1968
Parker & Sons
$2,600
Parker Tree
2,550
$5,150
$4,721.15
1969
Parker & Sons
$2,700
Parker Tree
2,700
$5,400
$4,953.62
1970
Parker & Sons
$2,600
Parker Tree
2,600
$5,200
$4,782.30
The June 11, 1965, minutes of the Board of Directors meeting of Parker & Sons contained the following statement concerning the corporation's sick pay plan.
The plan is that any employ [sic] person that has been with the corporation for five years and is presently employed when the time of sickness occurs that his salary shall continue in full but not to exceed $100 a week with no limitations on the length of time. Disability from accidents starts the first day of employment. All *463 medical bills not covered by insurance will be paid by the corporation. Prior to the years in question, J. D. Parker applied for and began receiving benefits from the Social Security Administration on the ground that he was totally and permanently disabled and also received social security disability benefits during the years in question. A stock brokerage account was maintained on behalf of Parker Tree and Parker & Sons in the years in issue with the stock brokerage firm of Merrill, Lynch, Pierce, Fenner and Smith. J. D. Parker handled stock transactions over the phone during the years in question for himself, Parker & Sons, and Parker Tree. During a part of the period in question, J. D. Parker had a telequote machine installed in his office at home. J. D. Parker signed checks on the Parker Tree and Parker & Sons bank accounts during each month of the calendar years 1968, 1969, and 1970. The principal source of income of the two corporations during the taxable years 1968, 1969, and 1970 was from the purchase and sale of securities. On its 1968, 1969, and 1970 income tax returns, Parker & Sons claimed 100 percent of the expenses and depreciation on a 1968 Cadillac and a 1968 *464 Oldsmobile. No records were maintained on behalf of the corporation to show either the amount of the automobile expenses or the extent of personal use of the automobiles by J. D. and Helen Parker during 1968, 1969, and 1970.The petitioners did not own personal automobiles during the taxable years 1968, 1969, and 1970. However, two automobiles owned by petitioners' sons were available for their use during the years in issue. In the notice of deficiency dated March 17, 1976, respondent determined that: (1) J. D. Parker received payments of $37,500 and $27,808.15 from Parker & Sons in 1968 and 1969, respectively, which payments constituted constructive dividends; (2) J. D. Parker received constructive dividends of $1,406.37 From Parker & Sons in each of the taxable years 1968, 1969, and 1970 (representing 50 percent of the automobile expense deductions claimed) from the personal use of automobiles owned by the corporation; (3) J. D. Parker does not qualify for the sick pay exclusion under section 105 for the taxable years 1968, 1969, and 1970; and (4) A part of the underpayment of income taxes for the taxable years 1968 and 1969 was due to negligence or intentional disregard of rules *465 and regulations. [17]
OPINION Issue 1: Constructive Dividends
The first issue for our decision is whether the amounts of $37,500 and $27,808.15 received by J. D. Parker from Parker & Sons in 1968 and 1969, respectively, constitute constructive dividends within the meaning of sections 301 and 316.Petitioner argues that these sums represent the repayment of loans he made to the corporation over a number of years and thus do not constitute taxable income. J. D. Parker testified that he loaned substantial sums of money to Parker & Sons over the years. In support of his testimony petitioner introduced minutes of a meeting of the Board of Directors of Parker & Sons dated October 31, 1962, which contain a resolution stating that the corporation would give J. D. Parker a note in recognition of remuneration received from Mr. Parker in the total amount of $183,979.18. Attached to the mintues was a demand note in that amount given by Parker & Sons to J. D. Parker. Mr. Parker also introduced minutes *466 of a Board of Directors meeting dated June 11, 1965, which stated that the corporation's accountant's workpapers disclosed that J. D. Parker had advanced $91,367.75 to obtain the Elizabeth Parker farm in 1961. A corresponding year-end entry was made on Parker & Sons' books in 1965 debiting an asset entitled "Land" and crediting on account payable to J. D. Parker in the amount of $91,367.75. These items constitute the only documentary evidence in the record supporting Mr. Parker's claim that he was a creditor of Parker & Sons in 1968 and 1969. Respondent argues that the statements made in the minutes that on October 1, 1962, Parker & Sons owed J. D. Parker $183,979.18 and on June 11, 1965, owed Mr. Parker $91,367.75 are inconsistent with the 1961, 1962, and 1963 end of the year corporate balance sheets which were attached to the Revenue Agent's report of May 29, 1965, which reflected no outstanding liabilities for loans from shareholders.The corporation agreed with the Revenue Agent's report at that time. Respondent also notes that the June 11, 1965, minutes are inconsistent with Parker & Sons's balance sheet reflected on its 1964 income tax return filed on August 7, 1965. The *467 balance sheet indicates that there were no outstanding accounts payable or loans from stockholders as of the end of the calendar year 1965. Thus, respondent points out, Parker & Sons' own 1964 return contradicts the minutes prepared only 2 months earlier. [18]
Petitioner did not introduce any credible evidence to rebut respondent's contentions. The general nature of J. D. Parker's testimony that he loaned Parker & Sons considerable amounts of money simply does not suffice to satisfy his burden of proving that respondent's determination was in error. Rule 142(a).In addition, the inconsistencies pointed out by respondent among the minutes introduced by petitioner, prior revenue agent reports and Parker & Sons' income tax returns shed considerable doubt on the accuracy of the minutes.Petitioner's failure to introduce supporting evidence from Parker & Sons' corporate records requires our conclusion that respondent's determination must be sustained. Thus, we hold that the $37,500 received in 1968 and the $27,808.15 received in 1969 constitute constructive dividends to J. D. Parker.
Issue 2: Personal Use *468 of Corporate Automobiles
Respondent determined that petitioners received income in the form of constructive dividends in the amount of $1,406.37 for 1968, 1969, and 1970. These amounts represent 50 percent of the expenses and depreciation claimed as a deduction by Parker & Sons in those years for a 1968 Oldsmobile and a 1968 Cadillac owned by the corporation. Although petitioner does not claim that he and his wife never used these automobiles for personal purposes, he testified that they were used 80-90 percent for corporate purposes. Respondent counters by pointing out that petitioners did not own any personal automobiles during the years in question. However, J. D. Parker testified that his sons who lived next door to him each owned two cars which were available for his use at any time. There were no records kept by either Parker & Sons or petitioners regarding the extent of the use of the corporate automobiles for business and personal purposes. In addition, no documentation was presented at trial to substantiate either the operating expenses or the depreciation allowable on the automobiles. The extent of petitioner Helen Parker's use of the vehicles was not even mentioned. *469 We are unable to find J. D. Parker's estimate that the vehicles were used 80-90 percent of the time for corporate purposes more persuasive than respondent's estimate that the vehicles were used for corporate purposes only 50 percent of the time. Thus, petitioners have not met their burden of proving that respondent's determination is erroneous. Welch v. Helvering,supra.Accordingly, respondent's determination that 50 percent of the expenses claimed by Parker & Sons relative to the corporate automobiles for 1968, 1969, and 1970 is taxable to petitioners as a constructive dividend is sustained. Sections 301 and 316. Issue 3: Sick Pay Exclusion
Section 105(d) as in effect during the years in issue provided in relevant part as follows: (d) Wage Continuation Plan.--Gross income does not include amounts [attributable to employer contributions] if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent such amounts exceed a weekly rate of $100. * * * Section 1.105-4(a)(5), Income Tax Regs., interprets the term "absent from work" *470 as follows: (5) For the purpose of section 105(d), whether an employee is absent from work depends upon all the circumstances. * * * An employee is not absent from work when he performs any services for his employer at his usual place or places of employment, whether or not the services are the usual services performed by the employee. Furthermore, the employee is not absent from work when he performs substantial services for his employer, even though they are performed at a place other than his usual place of employment. * * * [Emphasis added.] Under the facts presented here we agree with respondent that petitioner is not entitled to exclude any amounts received from Parker Tree and Parker & Sons as sick pay because he performed substantial services for those corporations within the meaning of section 1.105-4(a)(5), Income Tax Regs.
The evidence is undisputed that J. D. Parker was the chief executive officer of the two corporations during the years in issue. As such, he made all significant business decisions and executed stock transactions. While we are cognizant of the fact that Mr. Parker was seriously ill during this period and that his physical condition restricted the performance *471 of his duties to the corporations, the passive nature of the corporations' businesses permitted the rendering of substantial services from Mr. Parker's home. Indeed most of Mr. Parker's activities on behalf of the corporations wer engaged in over the telephone. Section 105(d) and respondent's regulations require that for the exclusion of sums as sick pay that not only must the taxpayer be ill but also that such illness must prevent the rendering of substantial services. That latter requirement is not met here. [19] Respondent's determination is sustained. Issue 4: Addition to Tax for Negligence
In the notice of deficiency respondent determined section 6653(a) additions to tax of $931.94 and $447.99 for 1968 and 1969, respectively. That section provides that if any part of an underpayment is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there will be added *472 to the tax an amount equal to 5 percent of the underpayment. Respondent's basis for the imposition of the addition to tax for negligence was J. D. Parker's failure to report payments received by him in 1968 and 1969 of $37,000 and $27,808.15, respectively, and the improper exclusion of income as sick pay during those years. Because petitioners have failed to meet their burden of proof on those issues we sustained respondent's determinations. We find and hold that respondent's imposition of the section 6653(a) addition to tax is appropriate here as petitioners have failed to produce evidence to show that such omissions were not due to negligence. Enoch v. Commission,supra.
FINDINGS OF FACT J.D. Parker & Sons, Inc. (Docket No. 5433-76)
J.D. Parker & Sons, Inc. is a North Carolina corporation which, at the time of filing its petition, had its principal place of business in Elm City, North Carolina. Parker & Sons was formed on May 5, 1955, for the purpose of engaging in farming activities. It filed its Federal income tax returns for the calendar years 1968, 1969 and 1970 using the cash receipts and disbursements method. During the years 1968, 1969, and 1970, J. D. Parker held the *473 office of Secretary of Parker & Sons and was principally responsible for conducting the business affairs of the corporation. Mr. Parker was seriously ill during the years in issue. During 1968-1970, the farming activities of Parker & Sons were minimal. The only income the corporation had from farming during those years was $4.125 from the sale of cattle which was reflected on its 1968 income tax return. Other income for the years in question came from dividends, interest, rent, gains from the sale of securities, land and equipment, and other miscellaneous income. In 1968, Parker & Sons sold 3,145.7 acres located in Washington County, North Carolina, to Mordecai-Pfeiffer Ranch (hereinafter Mordecai) for $188,742. Parker & Sons also sold a bulldozer and 50 rolls of barbed wire to Mordecai for $6,250, making the total sales proceeds $194,992. The 3,145.7 acre tract was the last of a 55,084.95 acre parcel in Washington and Hyde counties that was acquired in 1956 for $1,250,000 and had been sold off by Parker & Sons in separate tracts over a period of time. As part of the purchase price for the land, Mordecai gave Parker & Sons $19,499.20 as a down payment and a note and deed of *474 trust for $175.492.80, payable by nine annual installments of $19,499.20, plus 6 percent interest. On the Schedule D attached to its 1968 return, Parker & Sons reported long-term capital gain from the sale of land and buildings in the amount of $37,499.20. A notation to the schedule indicated that this included $19,499.20 for the first installment payment on a sale of land totaling $194,992 and also stated that Parker & Sons had no basis in the land. The $175,492.80 note and deed of trust from Mordecai was fully satisfied in 1969. On May 5, 1969, Parker & Sons received a check for $30,198.91 from Mordecai. This amount consisted of the following: $13,832.00
Principal on a $34,000 note from Mordecai [20]
829.91
Interest on the $34,000 note
15,537.00
Principal on $175,492.80 deed of trust
$30,198.91
On July 24, 1969, Parker & Sons received a cashier's check from Weyerhauser Company[21] *475 on behalf of Mordecai in the amount of $189,269.20. This amount consisted of the following: $159,955.80
Principal balance on $175,492.80 deed of trust
724.22
Auto travel reimbursement
14,320.06
Interest on $175,492.80 deed of trust
14,269.12
Overpayment refunded to Mordecai [22]
$189,269.20
On its 1969 Federal income tax return Parker & Sons reported as long-term capital gains the receipt of only $160,668.32 on the Mordecai sale. The 1969 return also reflected that it had no basis in the tract of land sold to Mordecai in 1968. Parker & Sons reported no interest income on its 1969 return. In 1961 Parker & Sons acquired a 235 acre farm located in Wilson County, North Carolina, from Mrs. Josephus Parker (Elizabeth) mother of J. D. Parker. This farm had been owned by the Parker family for many years and was known as the "Home Place." There were two deeds drawn up conveying the farm to Parker & Sons, each reflecting different dates and a separate consideration. One deed was dated September 1, 1961, and was recorded on November 4, 1961. The second deed was dated September 2, 1961, but was not recorded until October 29, 1964. The consideration reflected in the deed dated September 1, 1961, required Parker & Sons to pay Elizabeth $16,000 per year for 4 years commencing January 1, 1962, at the rate of $1,333.33 per *476 month, to assume and pay off an existing mortgage of on the property to Metropolitan Life Insurance Company, plus accrued interest, and to pay Elizabeth from and after January 1, 1965, and during her lifetime the sum of $800 per month.
The second deed, dated September 2, 1961, but not filed until October 29, 1964, (i.e., subsequent to Elizabeth's death in August 1964) purported to convey Elizabeth's interest in the farm in consideration of the assumption by Parker & Sons of the Metropolitan Life mortgage and the forgiveness of other indebtedness from her to the corporation in the amount of $80,000. Parker & Sons did not allocate any part of its cost of the farm to depreciable assets in 1961 and did not take any depreciation deductions with respect to the farm on its 1961 through 1964 income tax returns. In 1965, Revenue Agent Harold Austin completed an examination of Parker & Sons' income tax returns for the years 1958, 1961, 1962 and 1963. In his report dated May 29, 1965, Revenue Agent Austin did not reflect the Elizabeth Parker farm as an asset on the balance sheet prepared for the calendar year 1961. This property appeared on the 1962 balance sheet at a cost of $69,734.89 which *477 represented an allocation of $57,000 for the land and $12,734.89 for the timber. However, adjustments were made in the report increasing the $69,734.89 basis by $7,553.42 for 1962 farm profits retained by Elizabeth Parker and decreasing the basis by $23,734.89, which amount Revenue Agent Austin determined to be excessive basis claimed by Parker & Sons. The explanation reflected in Revenue Agent Austin's report for reducing the basis in the Elizabeth Parker farm by $23,734.89 was as follows: To reduce the basis of the land and timber in Wilson County by the excess claimed at the time of purchase over the amount of the mortgage assumed. This excess represented the payments made to and on behalf of Mrs. Elizabeth E. Parker by J. D. Parker prior to the date of the purchase. Since there is insufficient evidence at this time showing that this was intended to be part of the consideration for the land and timber, the payments are being eliminated from the basis. Revenue Agent Austin's report reflected that Parker & Sons had a basis of $64,341.53 in the Elizabeth Parker farm as of the end of the calendar year 1963. This basis included the timber allocation of $12,734.89. No part of the *478 basis in the Elizabeth Parker farm was allocated to depreciable assets in the report. In 1965, First Citizens Bank & Trust Co., the administrator of the Estate of Elizabeth Parker, brought legal action against Parker & Sons to recover certain payments which purportedly had not been made under the first deed given by Elizabeth to Parker & Sons. This action was settled in 1965 by Parker & Sons paying the administrator $21,333.32. In December 1965 Parker & Sons retained a realtor, B. W. Kelly, to make an appraisal of the Elizabeth Parker farm. Mr. Kelly placed a total value of $161,460 on the farm, of which he allocated $12,000 to timber, $47,000 to the land and $102,460 (approximately 63.4 percent of the total value) to depreciable buildings and equipment. In 1965, various adjustments were made to the books of Parker & Sons relative to the Elizabeth Parker farm. One adjustment was made debiting a depreciation account for equipment and buildings for $102,460 and crediting land costs. Parker & Sons added the buildings and equipment reflected on the December 1965 appraisal report to the depreciation schedule attached to its 1965 income tax return and began claiming a depreciation deduction *479 with respect to each item in accordance with Mr. Kelly's valuation. Revenue Agent Horace Piner discovered the entry increasing Parker & Sons' basis for buildings and equipment while conducting an examination of the corporation's income tax returns for the years 1968, 1969 and 1970. Agent Piner determined that Parker & Sons' increase in its basis in the Elizabeth Parker farm in 1965, based upon the Kelly appraisal, was improper. Mr. Piner determined that the corporation's basis in the farm based on actual payments to Elizabeth Parker or her estate was $76,839.64, computed as follows: Assumption of Outstanding Balance
of Mortgage to Metropolitan Life
$46,000.00
1962 Farm Profits which Elizabeth
was allowed to keep
7,553.42
1963 Farm Profits which Elizabeth
was allowed to keep
10,988.11
Settlement paid to Elizabeth's
Estate
21,333.00
85,874.53
Add: Capitalization of
Machine Hire
3,900.00
89,774.53
Less: Amount allocated
to Timber
$12,734.89
Land Adjustment
200.00
12,934.89
$76,839.64
Revenue Agent Piner allocated the adjusted basis of the Elizabeth Parker farm to depreciable and non-depreciable property on the basis used by the Wilson County Tax Assessor in his 1958 reappraisal of the farm (i.e., 31.36 percent *480 to buildings and 68.64 percent to land). Accordingly, $24,096.91 of the adjusted basis of $76,839.64 was determined by Mr. Piner to be allocable to depreciable property. In the notice of deficiency issued by the Appeals Division of the Internal Revenue Service, the respondent determined that the adjusted basis of the Elizabeth Parker farm was $139,798.44, computed as follows: Contract Price
$127,500.00
Less: Allocation to Timber
$12,734.89
Land Adjustment
200.00
12,934.89
$114,565.11
Add: Machine Hire
3,900.00
Paid to Bank
21,333.33
25,233.33
Total Basis
$139,798.44 The respondent allocated the adjusted basis between depreciable and non-depreciable assets in the following manner: Depreciable Assets
31.36
percent
$ 43,840.79
Non-Depreciable Assets
68.64
percent
95,957.65
100.00
percent
$139,798.44
Parker & Sons claimed depreciation totaling $26,009.09 in connection with the Elizabeth Parker farm during the years 1965 through 1967. The depreciation determined by respondent to be allowable, the amount claimed on the return and the proposed resulting increase in income for 1968, 1969, and 1970 are as follows: 1968
1969
1970
Claimed per Return
8,956.87
34,735.42
3,325.21
Allowed
1,614.00
1,451.00
1,307.00
Increase to Income
$7,342.87
$33,284.42
$2,018.21
Parker *481 & Sons owned a 1968 Cadillac and a 1968 Oldsmobile during the years 1968, 1969, and 1970. On its returns for those years, petitioner claimed deductions in connection with the use of the automobiles which was disallowed in part by the respondent. The amounts of deductions claimed, allowed and disallowed are as follows: 1968
1969
1970
Auto Expenses
$ 700.00
$ 700.00
$ 700.00
Depreciation-Auto
+2,112.74
+2,112.74
+2,112.74
Total Claimed
2,812.74
2,812.74
2,812.74
Allowed
-1,406.37
-1,406.37
-1,406.37
Disallowed
$1,406.37
$1,406.37
$1,406.37 Respondent disallowed one-half of the deductions claimed in each year on the ground that Parker & Sons had not established that the amounts claimed constituted ordinary and necessary business expenses or were expended for the purpose designated. No contemporaneous records were kept of the use of the automobiles.J. D. Parker and Helen H. Parker did not own any personal automobiles during 1968, 1969 or 1970. Parker & Sons claimed a deduction of $10,230.75 under section 165(g) on its 1970 income tax return based upon the worthlessness of 100 shares of Stanrock Uranium stock and 1,000 shares of Commonwealth United stock.The basis for claiming the loss was the suspension *482 of all trading activity in both of these stocks on the American Stock Exchange. As of January 27, 1972, Stanrock Uranium stock was trading at a bid price of $ .40 per share and Commonwealth United was trading at a bid price of $ .20 per share. Asking prices were $ .50 and $ .28, respectively. Respondent disallowed the claimed deduction on the ground that Parker & Sons had failed to establish that the stock became worthless in 1970. Parker & Sons filed the proper form (Standard Form 7004) with the respondent seeking an automatic 3-month extension for filing its corporate income tax return for the calendar year 1968 from March 15, 1969, to June 15, 1969. Instructions appearing on Standard Form 7004 provide that a duplicate copy of that form be attached to the income tax return. A copy of the form requesting the extension from March 15 to June 15 was not attached to either the original or amended 1968 returns. The instructions on Form 7004 further provide that the taxpayer must deposit on or before the original due date of the return, with a commercial bank authorized to accept such deposit, 50 percent of the tax tentatively determined to be due for the taxable year. A subsequent *483 Form 7004 was filed on behalf of Parker & Sons requesting an extension for filing its 1968 corporate income tax return from June 15, 1969, to September 15, 1969. Parker & Sons made no deposit of estimated 1968 income taxes either with its initial or subsequent request for extension. On June 25, 1969, the District Director of Internal Revenue wrote Parker & Sons granting an additional extension for filing its 1968 Federal income tax return until September 15, 1969. The granting of the additional extension of time was conditioned upon Parker & Sons having filed a proper timely Form 7004 and having paid the tax installments requested by law on or before the expiration date of the original extension. Parker & Sons filed a 1968 return which was received at the Southeast Service Center on September 17, 1969. The return reflected total income of $11,842.48, [23] *484 total deductions of $17,313.11 and an operating loss of $5,470.63. The only schedules attached to the return on which entries were made were Schedules H through R listing general background information, a reconciliation of income per books with the income per return, and an analysis of unappropriated retained earnings. In 1968, J. D. Parker executed on behalf of Parker & Sons 231 separate short-term and long-term sales of securities which generated gross sales of $934,506.45, in which it had a cost basis of $877,954.75 and from which it derived a gain of $56,551.70. Parker & Sons also sold certain land and equipment on the installment basis and received a gain in 1968 of $19,499.20. Parker & Sons filed an amended 1968 income tax return which was received at the Southeast Service Center on December 17, 1969. The amended return listed sales of securities, land and equipment and reflected total income of $116,832.81, deductions of $37,148.63, taxable income of $74,521.36 and a tax due of $19,666.27. The following schedule reflects the differences in income and deductions appearing on Parker & Sons original 1968 return and its amended 1968 return: Original
Amended
Gross Receipts
$ 3,452.48 $ 4,365.98
Dividends
6,073.90
Other Interest
3,570.57
Gross Rents
8,390.00 8,390.00
Net Gains (Schedule D)
94,050.90
Other Income
381.46
Total Income
$ 11,842.48 $116,832.81
Salaries & Wages
$ 2,669.12 $ 4,819.12
Repairs
1,186.97 1,186.97
Taxes
3,253.26 7,707.52
Interest
7,238.60 7,625.59
Depreciation
12,223.60
Other Deductions
2,965.16 3,585.83
Total Deductions
$ 17,331.11 $37,148.63
Special Deductions
5,162.82
Taxable Income
$ (5,470.63)
$74,521.36
Both *485 the original and amended 1968 returns were signed by Alton P. Parker, President of Parker & Sons. Parker & Sons filed Form 7004 with the respondent seeking an automatic 3-month extension of time for filing its corporate income tax return for the calendar year 1969 from March 15, 1970, to June 15, 1970.Petitioner made no remittance of 1969 estimated taxes with the form. Parker & Sons subsequently sought and received an additional 3-month extension for filing its 1969 return to September 15, 1970. The July 2, 1970, letter from the District Director of the Internal Revenue Service, Chamblee, Georgia, conditioned the granting of the second extension for filing upon petitioner having filed a proper timely request for extension using Form 7004. Parker & Sons filed a 1969 return which was received at the Southeastern Service Center on October 21, 1970. The return reflected total income of $114,712.15, total deductions of $65,706.44, taxable income of $45,804.42 and total tax of $17,034.73. Petitioner made no deposit of estimated 1969 income taxes prior to filing its 1969 corporation income tax return. In the notice of deficiency dated March 17, 1976, respondent determined that Parker *486 & Sons received unreported capital gain of $14,824.48 and unreported interest income of $15,374.43 in 1969 relative to the sale of land to Mordecai-Pfeiffer Ranch, Inc. Respondent also determined that petitioner was entitled to depreciation deductions of $1,614, $1,451 and $1,307 for the taxable years 1968, 1969 and 1970, respectively, instead of the greater amounts claimed on its returns for those years. Respondent further determined that one-half of the amounts deducted for automobile depreciation in the taxable years 1968, 1969 and 1970 were not allowable as ordinary and necessary business expenses. In addition, respondent determined that the claimed deduction of $10,230.75 in the taxable year 1970 for worthless stock was not allowable because it was not established that such stock became worthless in that year. Finally, respondent determined that Parker Tree was liable for the personal holding company tax for 1968, 1969 and 1970 and the late filing and negligence additions to tax for 1968 and 1969. OPINION Issue 1: Unreported Interest and Capital Gains
Respondent determined in the notice of deficiency that petitioner failed to report on its 1969 return the amount of $14,824.48 *487 as capital gains and the amount of $15,374.43 as interest received from Mordecai relative to the sale of land. On brief, respondent conceded that only the amount of $15,149.97 constituted interest in that year. In 1968 Mordecai gave Parker & Sons $19,499.20 as a down payment and a note and deed of trust in the amount of $175,492.80 for the purchase of a 3,145.7 acre tract of land. The $175,492.80 note and deed of trust was fully satisfied in 1969. Two checks relating to this transaction were received in 1969. On May 5 Parker & Sons received a check for $30,198.91 and on July 24 received a check for $189,269.20. On September 14, 1975, J. D. Parker furnished a handwritten statement to respondent's investigating agent explaining the allocation of these amounts. The summary clearly states that $829.91 of the amount received on May 5 and $14,320.06 of the amount received on July 24 constitutes interest. Petitioner did not report any interest on its 1969 return and J. D. Parker admitted at trial that these amounts of interest totaling $15,149.97 were received in that year. Subject to the respondent's concession on brief, respondent's determination is sustained. Although the $175,492.80 *488 balance on the note and deed of trust was fully satisfied in 1969 only the amount of $160,668.32 was reported as capital gain in that year. Respondent determined that the difference between these two sums, $14,824.48, constitutes additional long-term capital gain in that year. This determination is based on J. D. Parker's 1975 statement acknowledging the receipt of this additional amount and takes into consideration Parker & Sons refund of an overpayment to Mordecai. Petitioner contends, however, that no capital gains for 1968 or 1969 are reportable because its basis in the land sold to Mordecai was substantially in excess of the sales price. In its brief, ptitioner contends that its basis in the 3,145.7 acre tract was $180,580.09 and on reply brief petitioner contends that its basis was $375,641.55. Consistent with petitioner's treatment of this transaction on its 1968 and 1969 returns respondent determined that petitioner had no basis in the land sold to Mordecai. Petitioner bears the burden of proving that respondent's determination is in error. Welch v. Helvering,supra; Rule 142(a). While we sympathize with petitioner's difficulty in reconstructing ancient records, we *489 note that the keeping of proper records would have obviated this problem. See section 1.6001, Income Tax Regs. We have carefully considered petitioner's calculation of its alleged remaining basis but are not convinced of its accuracy. We are unable to find that petitioner has met its burden or proof. Respondent's determination is sustained. Issue 2: Elizabeth Parker Farm
Parker & Sons acquired a 235 acre farm located in Wilson County from J. D. Parker's mother, Elizabeth, in 1961. The depreciation claimed as a deduction by petitioner and the depreciation respondent determined to be allowable relative to this farm for the taxable years in issue is as follows: 1968
1969
1970
Claimed per Return
$8,956.87
$34,735.42
$3,325.21
Allowed
1,614.00
1,451.00
1,307.00
Increase to Income
$7,342.87
$33,284.42
$2,018.21
We must determine (1) Parker & Sons' basis in the farm; (2) the allocation of that basis between depreciable and non-depreciable assets; and (3) whether petitioner is entitled to a deduction in 1969 for razed or abandoned property. Basis
Two deeds were drawn up conveying the farm to Parker & Sons in 1961. The first deed was dated September 1, 1961, and provided that Parker & Sons would pay *490 Elizabeth $16,000 per year for four years commencing January 1, 1962, at a rate of $1,333.33 per month, would assume an existing mortgage of $46,000 on the property payable to Metropolitan Life Insurance Company, plus accrued interest, and would pay to Elizabeth from and after January 1, 1965, and during her lifetime, the sum of $800 per month. This deed was recorded on November 4, 1961. The second deed was dated September 2, 1961, and provided that Elizabeth's interest in the farm was transferred in consideration of the assumption by Parker & Sons of the Metropolitan Life Insurance Company mortgage and the forgiveness of other indebtedness owed by Elizabeth to the corporation in the amount of $80,000. This deed was not recorded until after Elizabeth's death in 1964. J. D. Parker testified that Parker & Sons delayed filing the second deed because of a dispute over the farm between himself and his siblings. However, the record does not disclose why a second deed was executed or even which deed was considered operative. In 1965, respondent examined Parker & Sons' 1958, 1961, 1962 and 1963 corporate income tax returns. After making various adjustments, the revenue agent's report *491 reflected that the corporation had a basis of $64,341.53 in the Elizabeth Parker farm as of the end of calendar year 1963. This total included an allocation of $12,734.89 to timber but no part of the basis was allocated to depreciable assets. In auditing Parker & Sons' returns for 1968, 1969 and 1970, respondent's agent, Horace Piner, concluded that the corporation's basis in the farm based on actual payments to Elizabeth Parker or her estate was $76,839.64. This amount included 1962 and 1963 farm profits which Elizabeth was allowed to retain, out-of-pocket expenses incurred by the corporation, the outstanding balance of the mortgage assumed, the settlement paid to the estate as the result of a lawsuit brought against the corporation and an additional amount added because of the capitalization of certain farm expenses. Parker & Sons did not agree with the revenue agent's conclusions and appealed his findings to the Greensboro District Appeals Office. The Appeals Office subsequently issued a notice of deficiency on March 17, 1976, which reflected respondent's determination that petitioner's basis in the Elizabeth Parker farm was $139,739.44. At trial, petitioner introduced a schedule *492 entitled "Analysis of Purchase of Property in Wilson County." This handwritten schedule consists of a note and checks purportedly paid to Elizabeth Parker. Relying on this schedule, it was J. D. Parker's testimony at trial that Parker & Sons had a cost basis in the Elizabeth Parker farm of $178,656.05. Respondent's witness, Revenue Agent Horace Piner, compared the "Analysis" to Parker & Sons cash receipts and disbursements journal and testified that a purported $60,000 note was not reflected on the corporate books and that many of the checks listed were actually in different amounts, different payees and different dates. Petitioner introduced no evidence to rebut Mr. Piner's testimony and on brief appears to concede that respondent's determination in the notice of deficiency that its basis in the farm is $139,798.44 is correct. Respondent argues on brief, however, that the correct basis is $76,839.44 rather than the higher figure reflected in the notice of deficiency. Respondent argues that the Appeals Officers computed petitioner's cost basis in the farm based upon the consideration reflected in the second deed (i.e., $127,000) rather than relying strictly upon the amount petitioner *493 could establish that it actually paid for the farm. We do not understand respondent to seek an increased deficiency on this issue. Moreover, we do not believe the evidence relating to this issue is sufficient to support a finding that Parker & Sons' basis in the Elizabeth Parker farm is other than the $139,798.44 figure determined in the notice of deficiency. Respondent's determination is sustained. Allocation of Basis
Parker & Sons did not allocate any part of the cost of the Elizabeth Parker farm to depreciable assets in 1961 (the year it was acquired) and did not take any depreciation deductions with respect to the farm on its 1961 through 1964 income tax returns. The 1965 revenue agent's report that concluded that Parker & Sons' basis in the farm was $64,341.53 as of December 31, 1963, did not allocate any portion of such basis to depreciable assets. In December 1965, Parker & Sons retained a realtor, B. W. Kelly, to make an appraisal of the Elizabeth Parker farm. Mr. Kelly's one-page report placed a total value of $161,460 on the farm. Of this total, $12,000 was allocated to timber, $47,000 was allocated to the land and $102,460 (approximately 63.4 percent) was allocated to *494 depreciable buildings and equipment. The following end-of-year adjustments were made to the corporate books relative to the Elizabeth Parker farm in 1965: a depreciation account for equipment and buildings was debited with $102,460 and a corresponding land cost account was credited.In addition, Parker & Sons added the buildings and equipment listed on Mr. Kelly's December 1965 report to its depreciation schedule and began claiming a depreciation deduction with respect to each item based on the value assigned it in the report. In auditing Parker & Sons 1968, 1969 and 1970 returns, Revenue Agent Piner concluded that the entry on the corporate books increasing the basis in the farm based on the 1965 appraisal was improper. Of the $76,839.64 which he determined to be the correct basis figure, Mr. Piner allocated 31.36 percent to depreciable assets. This was the same allocation placed upon the buildings by the Wilson County Tax Assessor in his 1958 reappraisal of the farm. The notice of deficiency for the taxable years 1968, 1969 and 1970, while increasing the determination of petitioner's cost basis in the farm to $139,798.44, allocated the same percentage ($43,840.79) to depreciable *495 assets. Again, this question is purely one of fact. We have carefully examined all the evidence and are unable to conclude that petitioner has met its burden of proving that the proper allocation of its basis in the Elizabeth Parker farm between depreciable and non-depreciable assets is other than that determined in the notice of deficiency. Welch v. Helvering,supra.
Petitioner's primary evidence is the December 31, 1965, one-page appraisal report by Mr. B. W. Kelly. Although the parties agree that Mr. Kelly was a realtor there is disagreement about his qualifications as an appraiser. Mr. Kelly is deceased and thus his testimony regarding the preparation of this report and his qualifications is not available to us. In addition, we note that the appraisal was made on December 31, 1965, four years after the property was acquired. The appraisal states rather cryptically that "[t]he buildings was [sic] appraised at the replacement value, the physical value and actual value." The applicable rule of law is that where land and buildings are purchased for a lump sum the total purchase price must be allocated between the land and the improvements in the same ratio as the value of the *496 depreciable property bears to the value of the entire property at the time of acquisition.Section 1.167(a)-5, Income Tax Regs.; Randolph Building Corp. v. Commissioner,67 T.C. 804, 807 (1977). There was no evidence presented that this document, even if competently prepared, was intended to reflect the fair market value of the depreciable portion of the property at the time it was acquired. [24] Thus, we must conclude that the report lacks probative value. Although not entirely clear, it is apparently petitioner's position that certain improvements were made to the farm in 1965. These items listed in the Schedule of Depreciation in Parker & Sons 1965 corporate income tax return coincide with the items listed on Mr. Kelly's December 31, 1965, appraisal. The only other reference in the record to improvements added to the Elizabeth Parker farm after its acquisition in 1961 is the following vague testimony by J. D. Parker. Q Mr. Parker, could you state your best estimate of the nature and extent of the improvements that Parker *497 & Sons made on the Elizabeth Parker farm for the years 1961 through 1969? A From 1961 to 1964, the year my mother died, right many repairs and improvements were made on quite a few of the dwellings, more on the dwellings than anything else. And of course, now with these tobacco curers, Parker & Sons put those curers in in '64, I think. On the fence, it was erected on the farm and the cattle were moved up there in the last of '64 and '65, they were put on there. Q Would that, then, in addition to the property that you have testified to on the appraisal made by Mr. Kelly-- * * * represent all of the depreciable property on the farm? A That was improvements and placed there, curers and ventilators, fences, and improvement was made just before Mr. Kelly * * * made his appraisal in 1965. We simply are unable to attach any weight to such vague and nonspecific testimony. There is no credible evidence from which to conclude that improvements were made to the Elizabeth Parker farm after its acquisition. Indeed, if such improvements were made or acquired in 1965, as is indicated on petitioner's return for that year, records substantiating their cost should be readily available. Based *498 on this record, we believe that respondent has been generous in allocating 31.36 percent of the basis to depreciable assets. That determination is sustained. Loss for Abandoned or Demolished Buildings
We have sustained respondent's determinations that Parker & Sons' adjusted basis in the Elizabeth Parker farm is $139,798.44 and that 31.36 percent ($43,840.79) is allocable to depreciable assets.For the 1969 taxable year petitioner claimed depreciation relating to the farm of $34,735.42. Of this amount respondent allowed a deduction of $1,451. A portion of the claimed depreciation ($30,979.82) was for items which petitioner claims were abandoned or razed in 1969. The only evidence supporting petitioner's claim that buildings and equipment were abandoned or razed in 1969 was J. D. Parker's unsupported testimony that the items listed on the return were in fact abandoned or razed in that year. While we do not doubt that such is Mr. Parker's general recollection, we simply are unable to find that this testimony alone satisfies petitioner's burden of proof. Respondent is sustained. Issue 3: Automobile Expenses We have sustained respondent's determination in docket No. 5432-76 that *499 50 percent of the $2,812.74 deductions for automobile expenses and depreciation claimed by Parker & Sons in taxable years 1968, 1969 and 1970 are taxable to J.D. and Helen H. Parker as constructive dividends because of their personal use of those vehicles. Accordingly, we must necessarily sustain respondent's determination here that that same 50 percent of those claimed deductions are disallowed as not constituting ordinary and necessary business expenses of Parker & Sons. Issue 4: Worthlessness of Stock
In 1970, Parker & Sons claimed a deduction of $10,230.75 for the worthlessness of 100 shares of Stanrock Uranium stock and 1,000 shares of Commonwealth United Stock. The reason for claiming the losses was the suspension of all trading activity in these stocks on the American Stock Exchange. Section 165(g)(1) provides as follows: (g) Worthless Securities (1) General Rule.--If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall * * * be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. Respondent disallowed the claimed deduction on the ground that Parker & Sons failed *500 to establish that the stock became worthless in the taxable year 1970. It was stipulated that as of January 27, 1972, Stanrock Uranium stock was trading at a bid price of $ .40 per share and Commonwealth United was trading at a bid price of $ .20 per share. The asking prices were $ .50 and $ .28, respectively. No evidence was introduced at trial to show that stock in Stanrock Uranium and Commonwealth United became "wholly worthless" in 1970. Section 1.165-5(c), Income Tax Regs.In fact, there is no evidence in the record from which we could determine that the subject stock had even declined in value during 1970. As the burden of proof is on Parker & Sons to prove that the stocks were worthless on December 31, 1970, Welch v. Helvering,supra; Rule 142(a), respondent's determination is sustained. Issue 5: Personal Holding Company Tax
Respondent determined that Parker & Sons constituted a personal holding company during its taxable years 1968 and 1969 and therefore asserted the section 541 personal holding company tax for those years. It is clear that Parker & Sons meets the requirements for personal holding company status as at least 60 percent of its adjusted ordinary gross income *501 tax personal holding company income and more than 50 percent of its outstanding stock was owned by or for not more than five individuals. Section 542. Petitioner does not argue otherwise. Respondent has conceded, however, that those payments which were made by petitioner to J. D. Parker and were determined to constitute constructive dividends were not taken into account in arriving at undistributed personal holding company income. We have sustained respondent's determination that those payments of $37,500 and $27,808.15 in 1968 and 1969, respectively, constitute constructive dividends. Therefore, an adjustment will be required to respondent's calculation of personal holding company tax during the Rule 155 computation. [25] *502 *503 Issue 6: Addition to Tax for Late Filing
The parties stipulated that petitioner filed the required form (Form 7004) with respondent seeking an automatic 3-month extension for filing both their 1968 and 1969 Federal income tax returns. However, respondent argues that such requests for extension were not timely filed. Petitioner's 1968 corporate income tax return was due on March 15, 1969, and its 1969 return was due on March 15, 1970. Therefore, according to the provisions of section 6081(b), petitioner must have filed its requests for automatic 3-month extensions on or before those dates in order to be effective. Section 1.6081-3 (a)(2), Income Tax Regs.
There is no evidence in the record to show the date on which these requests for extension were filed. Copies of these requests were neither attached to the 1968 return or amended return for that year or the 1969 return. Accordingly, respondent's determination that these returns were not timely filed must *504 be sustained. [26] Rule 142(a). Parker & Sons argues, however, that even if the returns were filed untimely, its failure to timely file was due to reasonable cause within the meaning of section 6651(a)(1). We have discussed this argument in regard to the late filing addition to tax imposed upon Parker Tree and believe our discussion and conclusion there is equally applicable here. While we understand that J. D. Parker was seriously ill during the years in issue, that he was in essence the chief executive officer of Parker & Sons, and that an accountant was employed to prepare the returns, we do not understand why Alton P. Parker, J. D. Parker's son (the vice-president of Parker & Sons and the person who actually signed the returns) was unable to assure that the corporate returns were timely filed. Petitioner does not explain why Alton Parker was unable to over-see the accountant's preparation of the corporate returns. As noted in our prior *505 discussion, petitioner's failure to present such evidence gives rise to a presumption that such withheld evidence would be unfavorable to petitioner's position. Wichita Terminal Elevator Co. v. Commissioner,supra.Respondent's determination of the applicability of the addition to tax for late filing for 1968 and 1969 is sustained. Issue 7: Negligence
We must sustain respondent's determination of the applicability of the section 6653(a) addition to tax if we find that anypart of the underpayment of tax for the taxable years 1968 and 1969 was due to negligence or intentional disregard of rules and regulations. Petitioner failed to keep records concerning non-corporate use of corporate automobiles and we have upheld respondent's disallowance of 50 percent of the expenses claimed on the basis that those amounts did not constitute ordinary and necessary business expenses. The failure to keep records with respect to such deductions is contrary to respondent's regulations and is, in itself, negligence. Section 1.6001, Income Tax Regs; see Schroeder v. Commissioner,40 T.C. 30, 34 (1963). We do not believe that petitioner's reliance on its accountant adequately explains the failure to *506 keep such required records. Respondent is sustained on this issue. Decisions in Docket Nos. 5431-76 and 5433-76 will be entered under Rule 155.
Decision in Docket No. 5432-76 will be entered for the respondent.
Footnotes
1. The following cases were consolidated with the above-captioned case for purposes of trial, briefing, and opinion: Josephus D. and Helen H. Parker, docket No. 5432-76 and J.D. Parker & Sons, Inc., docket No. 5433-76.↩
2. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.↩
3. All references to "Rules" are to the Tax Court Rules of Practice and Procedure.↩
4. Although it was stipulated that River Development Corporation itself gave Joseph Hill the $25,000 note, it is clear from the face of the note that the makers were the other shareholders in their individual capacities and that shares of the corporation were pledged as security for the loan.↩
5. No statutory deficiency was determined for the 1967 taxable year, however, because the 3-year statute of limitations for assessment of the tax under section 6501(a) had run prior to audit of the return. ↩
6. Petitioner does not address this issue on brief and thus we assume it has been conceded.Other adjustments in the notice of deficiency have been expressly conceded by the parties. Subsequent to the filing of the petition, petitioner conceded that it omitted short-term capital gain from the sale of securities in the year 1968 in the amount of $734.36. The parties agree that petitioner made an error in computing allowable depreciation which required a decrease in depreciation expense in 1968 of $1,431.67 and an increase in depreciation expense in 1970 of $208.76. Respondent conceded that the $75,000 payment received from Joseph Hill in 1968 and $2,500 of the $10,000 payment received in 1970 constitutes repayment of loan principal and not interest. Therefore, respondent also conceded that those two amounts are not included in the computation of personal holding company income.
7. Parker Tree does not deny that this transaction with Joseph Hill was tainted with usury. Although respondent determined in the notice of deficiency that the $75,000 payment in 1968 constituted interest income, that adjustment has been conceded by respondent because under North Carolina law payments on usurious contracts are automatically applied to the principal indebtedness. N.C. Gen. Stat. sec. 24-2; Kessing v. National Mortgage Corp.,278 N.C. 523, 180 S.E.2d 823, 829 (1971); Argo Air. Inc. v. Scott,18 N.C. App. 506, 197 S.E.2d 256↩ (1973). 8. This amount consisted of the remaining $75,000 principal plus interest at 6 percent.↩
9. Petitioners argue throughout these consolidated cases that respondent fails to refute the position of the petitioner on various issues and that respondent's position is based on opinion and speculation. We remind petitioners that they bear the burden of proof to "introduce sufficient evidence to make a primafacie showing that the Commissioner committed the errors alleged in the petition. Lyon v. Commissioner,1 B.T.A. 378, 379 (1925). Until such a primafacie showing is made, we need not concern ourselves with the merits of respondent's supporting evidence. See South Texas Rice Warehouse Co. v. Commissioner,366 F.2d 890, 898 (5th Cir. 1966), affg. 43 T.C. 540 (1965), cert. denied 386 U.S. 1016↩ (1967).
10. Although not explicitly stated, apparently petitioner would have us believe that $10,000 of the $12,500 transferred to Joseph Hill in May of 1969 was an interest free loan.↩
11. See Section 301.6651-1, Proced. and Admin. Regs.↩
12. Section 6152(a)(1)(B) as in effect during 1968 and 1970 granted corporations the privilege of electing to pay its tax in "two equal installments." According to subsection(b)(2), "the first installment shall be paid on the date prescribed for the payment of the tax, and the second installment shall be paid on or before 3 months after such date." Section 1.6152-1(a)(2)(ii) provides that a corporation was deemed to have made an election to pay its tax in installments if: It files an application on Form 7004 for an automatic extension of time to file its income tax return, as provided in sec. 1.6081-3, and pays 50 percent of the unpaid amount of the tax at such time. If the amounts are paid within the specified time no interest is due on either installment. Section 6601(c)(2); Hayden Publishing Co. v. United States,341 F.2d 646, 647↩ (Ct. Claims 1965).
13. See Monasmith v. Commissioner,T.C. Memo. 1979-19.Compare Thompson v. Commissioner,66 T.C. 737, 741-742 (1976) and Mason v. Commissioner,68 T.C. 354, 357-358↩ (1977).
14. Gyro Engineering Corp v. Commissioner,T.C. Memo. 1974-288↩.
15. Estate of Long v. Commissioner,T.C. Memo. 1978-172; Hayes v. Commissioner,T.C. Memo. 1967-80↩.
16. In addition, a 1965 year end adjusting entry was made to Parker & Sons' books creating a depreciable basis of $102,460 in this farm.↩
17. Petitioners conceded that J. D. Parker received a declared dividend of $1,552 from Parker Tree in 1970 and that this dividend should have been reported on their joint income tax return for 1970.↩
18. Respondent also contests the genuineness of the minutes introduced by petitioner.↩
19. Because we have found that J. D. Parker rendered substantial services to the two corporations we need not reach respondent's alternative argument that Parker Tree did not have a wage continuation plan during the years in issue. See section 1.105-4(a)(2), Income Tax Regs.↩
20. Although the record is silent on this point, the $34,000 note was apparently not directly related to the sale of the 3,145.7 acre tract.↩
21. Apparently Mordecai resold the 3,145.7 acre tract to Weyerhauser in 1969. 22. This amount apparently constitutes Mordecai's profit on the sale of the land to Weyerhauser.↩
23. The reported income consisted of gross receipts of $3,452.48 and interest received of $8,390.
24. We are also puzzled by petitioner's failure to explain why it failed to claim any depreciation deductions relative to this farm for 1961, 1962, 1963 and 1964.↩
25. In an addendum to its opening brief, Parker & Sons contends that its accountant, Perry Wheeler, failed to properly claim a basis of $6,000 in property located in Roper, North Carolina, which it sold on August 18, 1968, for $18,000. Petitioner reported a long-term capital gain of $18,000 relative to this sale on its 1968 return. Parker & Sons contends that a $6,000 basis in this property is established by the purchase price of $6,000 which it paid to Z. P. Norman, trustee, pursuant to the purchase of the property under the powers of sale provisions in a deed of trust. Respondent argues, however, that petitioner itself was the beneficiary of the note and deed of trust being foreclosed and hence it paid the $6,000 to itself. Therefore, respondent argues, the question which petitioner must address in order to prove that it had basis in this property is how and at what cost, if any, it acquired the note and deed of trust that was being foreclosed. The January 2, 1964, deed states that the original bearer and holder of the note secured by the deed of trust on the property in 1957 was Central Standard Life Insurance Company. The deed further states that Central Standard Life Insurance Company transferred the note to Parker & Sons on May 3, 1963. No consideration for such transfer is stated in the deed. We must agree with respondent's analysis. The payment by Parker & Sons of $6,000 to satisfy a note and deed of trust held by itself does not suffice to prove basis in the underlying property. Thus, the entire $18,000 received as a result of this sale constitutes personal holding company income. No evidence was introduced to show the circumstances surrounding the transfer of the note to Parker & Sons on May 3, 1963. Such failure is fatal to its position. We are unable to conclude from this record that Parker & Sons had any basis in this property at the time of its sale.
26. Because of our finding that petitioner's returns were not timely filed because there is no evidence to show that the requests for extension for time to file were themselves timely filed, we need not address respondent's alternative arguments.↩